Filed 5/14/14  In re Anthony H. CA2/4

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| In re ANTHONY H., a Person Coming Under the Juvenile Court Law. | B251453 |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES,<br><br>        Plaintiff and Respondent,<br><br>    v.<br><br>KATHERINE G.,<br><br>        Defendant and Appellant. | (Los Angeles County Super. Ct. No. CK85818) |

APPEAL from orders of the Superior Court of Los Angeles County, Akemi Arakaki, Judge.  Affirmed.

Janette Freeman Cochran, under appointment by the Court of Appeal, for Defendant and Appellant.

John F. Krattli, County Counsel, James M. Owens, Assistant County Counsel, and William D. Thetford, Principal Deputy County Counsel for Plaintiff and Respondent.

Katherine G. (mother) appeals from dependency orders sustaining a petition brought under Welfare and Institutions Code section 387[1] and removing her son, Anthony H., from her custody. She challenges the sufficiency of the evidence to support the orders.

We find substantial evidence to support the jurisdiction and disposition orders, and affirm.

**FACTUAL AND PROCEDURAL SUMMARY**

Mother argues the facts related to Anthony but does not discuss her extensive history with the dependency court in proceedings involving her older children.[2] Since mother's history of noncompliance with reunification services as to the older children was a relevant factor for the court to consider in evaluating the risk posed to infant Anthony, we summarize the dependency proceedings that took place before his birth. The family's dependency history was recounted in the detention report filed as to Anthony in this case. We have taken judicial notice of the records on two earlier dependency appeals concerning mother. In *In re Alex H.* (December 23, 2013, B247978) [nonpub. opn.] (*Alex H.*), we affirmed an order denying a section 388 petition in which mother sought to reinstate her reunification services or return custody of her children Alex and A.H. to her or to the maternal grandmother. In *In re A.H.* (October 17, 2013, B249811), we dismissed mother's appeal from jurisdictional and dispositional orders as to Anthony on the first petition filed as to him, as we explain.

Anthony is mother's fourth child. Alex was born in 2009, A.H. in 2010, Angel in 2011, and Anthony in 2013. The family originally came to the attention of the Department of Children and Family Services (the department) in December 2010, when police officers responded to a domestic violence call. In February 2011, the juvenile

---

[1] Statutory references are to the Welfare and Institutions Code.

[2] Father is not a party to this appeal. We confine our history of the case to the circumstances concerning mother.

2

court sustained portions of a section 300 petition as to Alex and A.H., alleging a history of domestic violence and that both parents used methamphetamine and marijuana. (*Alex H.*, at p. 2.)

The children were removed from the parents' custody and reunification services were ordered for the parents. In April 2012, father was arrested for domestic violence. The court sustained allegations of domestic violence and substance abuse in a separate section 300 petition as to Angel, and added him to the parents' reunification plan. When maternal grandmother requested removal of the children from her care due to ongoing problems with the parents, they were placed in foster care. (*Alex H.*, at pp. 2–3.)

Mother's reunification services as to Alex and A.H. were terminated at the 18-month review hearing in June 2012. She had been terminated from her domestic violence program for lack of attendance and had not completed a parenting program. Although she had completed 21 individual counseling sessions and an outpatient substance abuse program, she had not enrolled in an after-care substance abuse program as recommended by her counselor. Between February and April 2012, she missed five out of seven drug tests. (*Alex H.*, at p. 3.)

In June 2012, mother enrolled in a residential substance abuse program at Foley House. An October report by her program counselor stated that she was uncooperative, had learned nothing from the program, and continued to prioritize her relationship with father over reunifying with the children. In November 2012, pregnant with Anthony, mother moved to Building Blocks, a sober living facility, and enrolled in Options for Recovery, a one-year treatment program for pregnant women or mothers with substance abuse problems. A section 366.26 hearing as to the older children was continued because no adoptive home had been found for Alex and A.H., and maternal grandmother's adoptive home study was unlikely to be approved. Between April 2012 and January 2013, mother missed 11 drug tests. She had tested negative nine times and positive for marijuana only once, in July 2012. (*Alex H.*, at pp. 3–4.) Mother filed a section 388 petition as to the two oldest children in December 2012. The court recognized that mother had made some progress, but concluded that her circumstances had not changed

and returning the children to her would not be in their best interests. We affirmed the denial of the section 388 petition in our unpublished opinion in *Alex H.*, case No. B247978, filed in December 2013.

While the dependency cases were pending as to mother's three older children, Anthony was born in January 2013. He and mother tested negative for drugs. On January 24, a team decisionmaking meeting was conducted as to Anthony. Although meetings for mother and father had been scheduled two hours apart in light of the history of domestic violence, they arrived together. Nevertheless, mother denied she was in a relationship with father at the time. A second team decisionmaking meeting was held on February 13, 2013 regarding Anthony. Once again, the parents arrived together despite separately scheduled meetings. The department recommended that Anthony be detained because of the parents' history of substance abuse and domestic violence.

Mother's case manager from her sober living home participated in the team decisionmaking plan and reported mother was in compliance with her program. A safety plan was developed under which mother agreed to continue to comply with all court orders and the department would consider allowing Anthony to remain in her care at the sober living home. The department reconsidered this approach the next day and sought, but was denied, a warrant for Anthony's removal.[3]

On February 28, 2013, the department filed a dependency petition on Anthony's behalf. At the detention hearing the same date, the court conditioned release of Anthony to mother on her remaining in the sober living program. It ordered that mother could not change her residence without notifying the social worker. The minute order stated: "The court advises the mother that even though the child has been returned to her care that court jurisdiction continues and the child is still under the jurisdiction of the court. [¶] *Until this case is closed, mother shall not change residence or that of the child without notifying the CSW. . . .* Violation of any of the above orders could result in the issuance of

---

[3] Meanwhile, on February 2, 2013, the court terminated mother's reunification services as to Angel and set a permanency planning hearing under section 366.26.

4

warrant for mother, removal of the child from her home, and even criminal prosecution." (Italics added.)

On April 10, 2013, the court sustained the original petition, finding Anthony was a child as described by section 300, subdivisions (b) and (j), based on the same facts alleged in the siblings' petitions and because mother was not in compliance with her case plan. Anthony was placed in home of mother under the supervision of the department. Mother was ordered to complete her outpatient program, participate in family maintenance services, and individual counseling. She was ordered to provide 10 consecutive random or on-demand drug tests and complete a full drug rehabilitation if she tested positive or missed a drug test. The court reiterated the orders made at the February 28 detention hearing: "The court advises the mother that even though the child has been returned to her care that court jurisdiction continues and the child is still under the jurisdiction of the court. [¶] *Until this case is closed, mother shall not change residence or that of the child without notifying the CSW.* . . . Violation of any of the above orders could result in the issuance of warrant for mother, removal of the child from her home, and even criminal prosecution." (Italics added.)

Mother appealed from the order sustaining the original petition as to Anthony. Appointed counsel for mother was unable to identify an arguable issue as to that order. We advised mother that she could submit any contentions she felt we should consider, but she did not do so. We dismissed the appeal as abandoned because no claim of error or other defect had been raised, pursuant to *In re Sade C.* (1996) 13 Cal.4th 952, 994 and *In re Phoenix H.* (2009) 47 Cal.4th 835.

On April 22, 2013, mother telephoned the social worker and left a voice mail that she had been discharged from her sober living program "due to 'an unfortunate situation.'" The detention report stated that mother said she "'went out'" on April 18, 2013 and took Anthony with her. She did not return to the sober living program because "'it was too late' and said she stayed at a friend's house." The social worker spoke with mother and told her she was in violation of the order that she remain in a sober living program. The worker reminded mother that Anthony had been released to her on the

5

condition that she remain in the sober living program. Mother stated she was aware of the order and planned to re-enroll at a sober living program. The worker inquired where mother had spent April 18 and 19, asking for contact information so she could assess the child's safety. Mother refused to provide the information, saying only that she had been at a friend's house. Mother denied using any drugs or alcohol during the weekend away from the sober living home. Maternal grandmother said mother and Anthony had stayed with her on April 20, but not on April 18, 19, and 21.

Mother's sober living program manager at Building Blocks reported that mother was discharged from the program on April 19, for failing to return home on April 18, not following program guidelines, and asking other residents to lie on her behalf. She said mother had been previously reprimanded for other curfew violations.

Mother spoke with the social worker on April 22, 2013 and said she was going to an interview that day with a sober living program called "'His Nesting Place.'" She was at her day substance abuse program, Options for Recovery. Mother said she did not believe "'there was anything wrong with staying out'" and accused other residents at the sober living program of lying about her actions.

The department decided to detain Anthony because it could not assess or ensure the child's safety since mother was no longer residing at her sober living program, particularly because she would not reveal where she had been staying. At a meeting with the social worker and the program coordinator at Options for Recovery, mother agreed to remove her belongings from maternal grandmother's home so Anthony could be placed there.

A section 387 supplemental dependency petition was filed as to Anthony on April 25, 2013. It alleged mother had been terminated from her sober living program on April 19, 2013, resulting in mother residing outside a sober living program in violation of juvenile court orders. The department alleged that the child was endangered by mother's failure to comply with the court orders.

In the detention report for April 25, 2013, the department said the family had received services since December 2010, but the parents' level of compliance had been

6

minimal and not sufficient to ensure a safe and stable home environment for Anthony. It recommended that the child be detained in the home of the maternal grandmother, that mother have monitored visits, and that all prior court orders not in conflict remain in full force and effect. As of the preparation of the April 25, 2013 detention report, a few days after mother was discharged from her program, mother had not informed the social worker that she had enrolled in a new sober living program.

In its report for the jurisdiction and disposition hearing on the supplemental petition on June 6, 2013, the department recommended that Anthony remain a dependent in suitable placement and that mother receive reunification services with random drug and alcohol testing. A last minute information for the court filed June 6, 2013 attached documents from mother's substance abuse program stating that she had been discharged on May 1, 2013, before completion of the program. Mother had violated a behavioral contract with the program by behaving disrespectfully and disruptively. She had struggled with the rules and structure of the program, and her commitment to practicing the tools of recovery had deteriorated for the past several months. She had "a very difficult time accepting responsibility for her own role in situations that involved conflict with others." She had completed portions of various classes and counseling sessions while in the program, and had submitted a total of 20 negative drug tests. Mother also failed to test on April 29, 2013 and May 13, 2013.

A last minute information for the court dated June 17, 2013 stated that mother was in non-compliance with all areas of her treatment program at Behavioral Health Services/NCADD, including individual sessions, groups, and self-help meetings. Mother had not submitted to any random drug tests at the program. Maternal grandmother was approved for continued placement of Anthony with her.

At the hearing on the section 387 petition, counsel for mother pointed out that at that time, mother's appeal from the adjudication of the original petition as to Anthony was still pending. The court acknowledged the argument, but found by a preponderance of the evidence that the section 387 petition was true and that Anthony was a person described by section 300, subdivisions (b) and (j). It found by clear and convincing

7

evidence that there was a substantial danger to Anthony's physical health, safety, and emotional well-being if returned to mother's custody. It found there were no reasonable means by which Anthony's physical health could be protected without removing him from mother's custody. Anthony's custody was placed under supervision of the department for suitable placement. Family reunification services were ordered for mother, which included compliance with the original case plan, including a substance abuse aftercare program, with drug testing. Mother filed a timely appeal from the order.

## DISCUSSION

Mother challenges the evidence supporting the jurisdiction and disposition orders on the section 387 petition.

"A section 387 supplemental petition is used to change the placement of a dependent child from the physical custody of a parent to a more restrictive level of court-ordered care. (§ 387; Cal. Rules of Court, rule 5.560(c).) In the jurisdictional phase of a section 387 proceeding, the court determines whether the factual allegations of the supplemental petition are true and whether the previous disposition has been ineffective in protecting the child. (§ 387, subd. (b); [Cal. Rules of Court,] rule 5.565(e)(1).) If the court finds the allegations are true, it conducts a dispositional hearing to determine whether removing custody is appropriate. [Citations.] A section 387 petition need not allege any new jurisdictional facts, or urge different or additional grounds for dependency because a basis for juvenile court jurisdiction already exists. [Citations.] The only fact necessary to modify a previous placement is that the previous disposition has not been effective in protecting the child. [Citations.]" (*In re T.W.* (2013) 214 Cal.App.4th 1154, 1161 (*T.W.*), fn. omitted.)

On appeal, we review the court's jurisdictional and dispositional findings for substantial evidence, drawing all reasonable inferences in support of the findings and viewing the record favorably to the juvenile court's order. (*T.W.*, *supra*, 214 Cal.App.4th at pp. 1161–1162.) "We do not pass on the credibility of witnesses, attempt to resolve

8

conflicts in the evidence or weigh the evidence." (*Id*. at p. 1161.) We affirm the order even if other evidence supports a contrary finding. (*Id*. at p. 1162.)

Since the section 387 petition in this case sought to remove Anthony from mother's custody, we apply the procedures and protections of section 361. (*T.W.*, *supra*, 214 Cal.App.4th at p. 1163.) The court must find, by clear and convincing evidence, that "'[t]here is or would be a substantial danger to the physical health, safety, protection, or physical or emotional well-being of the minor if the minor were returned home, and there are no reasonable means by which the minor's physical health can be protected without removing the minor from the minor's parent's . . . physical custody.' (§ 361, subd. (c)(1); see *In re Javier G.* (2006) 137 Cal.App.4th 453, 462.)" (*Ibid.*) A removal order is proper "if it is based on proof of (1) parental inability to provide proper care for the minor and (2) potential detriment to the minor if he or she remains with the parent. [Citation.] The parent need not be dangerous and the minor need not have been harmed before removal is appropriate. The focus of the statute is on averting harm to the child. [Citation.]" (*Ibid.*)

Mother contends that there was no order in effect requiring her to remain in a sober living home as of April 19, 2013, when she was terminated from the sober living program. She asserts that the condition that she live in a sober living home was made only at the detention hearing on February 28, 2013 and was not repeated at the disposition hearing on April 10, 2013. On that ground, she contends the allegation of the supplemental petition that she violated the court's order is not true. In addition, she contends that she contacted the department as soon as possible on Monday, April 22, 2013, because she was terminated on Friday, April 19 and could not contact the department over the weekend. Mother claims that Anthony could safely remain in her home, and that her failure to comply with her plan did not justify her removal.

We disagree. As we have discussed, at the April 10, 2013 disposition hearing, the court reiterated the orders made at the February 28 detention hearing: "The court advises the mother that even though the child has been returned to her care that court jurisdiction continues and the child is still under the jurisdiction of the court. [¶] *Until this case is closed, mother shall not change residence or that of the child without notifying the*

9

*CSW. . . .*Violation of any of the above orders could result in the issuance of warrant for mother, removal of the child from her home, and even criminal prosecution." (Italics added.) The court also stated: "All prior orders not in conflict shall remain in full force and effect." These orders put mother on notice that she was not to leave the sober living home without notice to the department. Mother failed to comply with this order, and engaged in conduct which led to her termination from the sober living program.

Mother describes her failure to timely return to the sober living house as a mere technical breach, not warranting the orders that ensued. It was more than that. First, her absence was substantial. Second, she attempted to cover it up by trying to persuade others at the facility to lie on her behalf. The court's orders took into account mother's failure to reunify with her three older children, and repeated failures to complete a substance abuse program. It is apparent from the record that the court sought to protect Anthony by ordering that mother live in a supervised and controlled environment, and returned infant Anthony to her care conditioned on mother's compliance with that plan. Mother's violation of these conditions provides support for the supplemental petition. The previous disposition was not effective in protecting Anthony. (*T.W.*, *supra*, 214 Cal.App.4th at p. 1161.)

In any event, there is substantial evidence supporting the trial court's jurisdiction and disposition orders on the supplemental petition as to Anthony. Since his birth, mother had been terminated from two treatment programs and was not in compliance with other services ordered. She repeatedly missed drug tests. She disappeared with infant Anthony and refused to account for her whereabouts for a three-day period. Based on this evidence, we affirm.

## DISPOSITION

The jurisdiction and disposition orders of June 18, 2013 are affirmed.


EPSTEIN, P. J.


We concur:



MANELLA, J.



EDMON, J.*

---

*Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.